# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY ELIAS GARCIA, | Case No. 1:21-cv-00328-BAK |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 15, 17) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.

## INTRODUCTION

Anthony Elias Garcia ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1] Plaintiff submits that the ALJ erred because: (1) the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's symptom testimony; (2) the ALJ failed to properly reject lay witness testimony; and (3) the final decision of the Commissioner arises from an unconstitutional administrative process. For the reasons set forth below, Plaintiff's Social Security appeal shall be granted.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 8, 9, 10.)

## II.

## BACKGROUND

### A.    Procedural History

On August 8, 2018, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, and on September 5, 2018, filed a Title XVI application for supplemental security income, alleging a period of disability beginning on November 1, 2017. (Administrative Record ("AR") 1109-1119.)   Plaintiff's application was initially denied on October 5, 2018, and denied upon reconsideration on June 13, 2019.  (AR 1038-1042, 1049-1054.)  On August 1, 2019, Plaintiff requested a hearing, and on May 11, 2020, testified at a hearing before Administrative Law Judge William G. Reamon (the "ALJ").  (AR 916-977, 1055-57.)  On July 24, 2020, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 30-49.)  On January 19, 2021, the Appeals Council denied Plaintiff's request for review.  (AR 1-7.)

On March 4, 2021, Plaintiff filed this action for judicial review.  (ECF No. 1.)   On November 4, 2021, Defendant filed the administrative record in this action.  (ECF No. 12.)  On December 27, 2021, Plaintiff filed an opening brief.  (Pl.'s Opening Br. ("Br."), ECF No. 15.) On February 10, 2022, Defendant filed an opposition brief.  (Def.'s Opp'n ("Opp'n"), ECF No. 17.)  Plaintiff did not file any reply brief.

### B.    The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, May 29, 2020:

- The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

- The claimant has not engaged in substantial gainful activity since November 1, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

- The claimant has the following severe impairments: diabetes mellitus with proliferative diabetic retinopathy without macular edema of the bilateral eyes; left eye vision loss/pseudophakia; and chronic kidney disease (20 CFR 404.1520(c) and 416.920(c)).

- The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

- Plaintiff  has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl but never climb ladders, ropes, or scaffolds; the claimant can have no exposure to dangerous moving machinery or unprotected heights; the claimant cannot commercially drive; the claimant cannot perform work that comes from the left side (e.g. assembly line or fast food line settings); and the claimant can perform no work requiring depth perception judgments as an elemental part of the job.

- The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

- The claimant was born on February 3, 1989 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

- The claimant has a limited education (20 CFR 404.1564 and 416.964).

- Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

- Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

- The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2017, through the date of this decision [July 24, 2020] (20 CFR 404.1520(g) and 416.920(g)).

(AR 35-44.)

### III.

### LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant

must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The regulations are generally the same for both types of benefits.  Therefore, further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

1   scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)

2   (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which,

3   considering the record as a whole, a reasonable person might accept as adequate to support a

4   conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of

5   Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

6       "[A] reviewing court must consider the entire record as a whole and may not affirm

7   simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting

8   Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not

9   this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

10  for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

11  susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

12  upheld.").

13                                    **IV.**

14                        **DISCUSSION AND ANALYSIS**

15      Plaintiff argues error for three primary reasons: (1) the ALJ failed to provide clear and

16  convincing reasons for rejecting Plaintiff's symptom testimony; (2) the ALJ failed to reject lay

17  witness testimony; and (3) the final decision of the Commissioner arises from an unconstitutional

18  administrative process.  The Court finds the ALJ erred by failing to provide clear and convincing

19  reasons for discounting the symptom testimony, and finds this matter appropriate for remand.

20  The Court finds it unnecessary to addresses Plaintiff's challenges regarding the lay witness

21  testimony or whether the decision of the Commissioner arises from an unconstitutional process.

22      **A.      General Legal Standards for Weighing a Claimant's Testimony[3]**

23      "An ALJ is not required to believe every allegation of disabling pain or other non-

24  exertional impairment."  Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation

25  and citations omitted).  Determining whether a claimant's testimony regarding subjective pain or

26

27  [3]   Although Defendant maintains its disagreement with the standard, Defendant acknowledges the clear and
    convincing standard is the applicable standard for weighing a claimant's testimony in the Ninth Circuit.  (Opp'n 21
28  n.3.)

1  symptoms is credible requires the ALJ to engage in a two-step analysis.  Molina v. Astrue, 674

2  F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first determine if "the claimant has presented

3  objective medical evidence of an underlying impairment which could reasonably be expected to

4  produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th

5  Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to

6  show that her impairment could be expected to cause the severity of the symptoms that are

7  alleged, but only that it reasonably could have caused some degree of symptoms.  Smolen, 80

8  F.3d at 1282.

9       Second, if the first test is met and there is no evidence of malingering, the ALJ can only

10  reject the claimant's testimony regarding the severity of her symptoms by offering "clear and

11  convincing reasons" for the adverse credibility finding.  Carmickle v. Commissioner of Social

12  Security, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must make findings that support this

13  conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude

14  the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit

15  the claimant's testimony.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

16      Factors that may be considered in assessing a claimant's subjective pain and symptom

17  testimony include the claimant's daily activities; the location, duration, intensity and frequency

18  of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage,

19  effectiveness or side effects of any medication; other measures or treatment used for relief;

20  functional restrictions; and other relevant factors.  Lingenfelter, 504 F.3d at 1040; Thomas, 278

21  F.3d at 958.  In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary

22  techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent

23  statements concerning the symptoms, and other testimony by the claimant that appears less than

24  candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a

25  prescribed course of treatment." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)

26  (quoting Smolen, 80 F.3d at 1284).  The district court is constrained to review those reasons that

27  the ALJ provided in finding the claimant's testimony not credible.  Brown-Hunter v. Colvin, 806

28  F.3d 487, 492 (9th Cir. 2015).

**B.      The Parties' Primary Arguments**

Plaintiff submits that the ALJ used a generic introductory statement concerning finding the claimant's testimony inconsistent with the medical evidence and other evidence, and while that is not error alone, aside from a general discussion of the medical evidence, argues the ALJ no supported rationale for finding Plaintiff's testimony not consistent.   (Br. 12.)   Plaintiff proffers it appears the ALJ articulated the basis that the objective evidence was not consistent with the allegations, however, Plaintiff emphasizes the ALJ cannot reject Plaintiff's subjective pain testimony solely on the basis of objective medical evidence, and the ALJ did not connect specific portions of Plaintiff's testimony to the cited records.  Plaintiff likewise argues the ALJ's routine statement that Garcia's testimony is not entirely consistent with the "other evidence in the record," is not sufficient because it is too vague to permit the Court to conclude the ALJ did not arbitrarily discredit the testimony, and the ALJ did not "identify the specific testimony" that is undermined by plaintiff's treatment history. See Lambert v. Saul, 980 F.3d 1266, 1268 (9th Cir. 2020) ("[T]he ALJ must identify the specific testimony that he discredited and explain the evidence undermining it."); Burrell v. Colvin, 775 F.3d 1133, 1139 (9th Cir. 2014) (finding legal error where the ALJ "never connected the medical record" to the claimant's testimony and did not make "a specific finding linking a lack of medical records to [the claimant's] testimony about the intensity of her . . . . pain").

As for the findings regarding the objective medical evidence, Plaintiff contends the ALJ's findings are not supported as the ALJ notes himself in the decision that Plaintiff has been treated with surgery and opioid medications, and these are not signs of conservative care or of an individual whose objective findings do not support the claim of disability.  (Br. 15.)  Finally, Plaintiff states it is significant that the ALJ did not articulate Plaintiff's sporadic daily activities as reason to reject the testimony – therefore any such argument by the Commissioner is not now before this Court, and even if the ALJ had articulated that rationale, nothing in Garcia's descriptions of his limitations (AR 924-968, AR 1159-1170) indicate that he is capable of maintaining substantial gainful work activity.

Defendant in turn largely presents arguments concerning the weighing of the testimony in

relation to the overall reasonableness of the ALJ's consideration of all of the evidence in coming to a proper RFC determination, and how such overall consideration demonstrates no error as to the credibility analysis.  Defendant submits that over four, single-spaced paragraphs, the ALJ summarized and analyzed the relevant medical evidence of record, including Plaintiff's course of treatment and the potential side effects of medications (AR 39-41); provided over 150 pinpoint citations to evidence in support of that analysis; and in finding the testimony inconsistent with the medical record, at the conclusion of the analysis, the ALJ explained how the medical evidence corroborated the existence of the limitations included in the RFC, but not greater limitations.  Defendant argues the ALJ also analyzed the persuasiveness of the opinion evidence and prior administrative medical findings; considered Plaintiff's allegations (AR 38-39); explained why he determined that Plaintiff had no greater limitations than were included in the RFC (AR 40-42): and that the ALJ's explanation was supported by specific citations to evidence of record that included both objective medical evidence and evidence regarding Plaintiff's course of treatment.

Specifically as to whether the ALJ properly considered the objective medical evidence, Defendant proffers that with one exception, Plaintiff does not dispute that the objective medical evidence is not supportive of or consistent with his allegations, in that Plaintiff claims his use of opioid medications and surgery to treat his conditions are not signs of conservative care. Defendant responds the ALJ never characterized his course of treatment as "conservative," and all authority relied upon by Plaintiff in his argument that the ALJ's consideration of his treatment was erroneous involved hearing decisions that erroneously characterized treatment as conservative.  Defendant emphasizes that as to the remainder of the medical evidence, Plaintiff has not identified any medical signs or laboratory findings supportive of his argument that he has greater limitations than were assessed in the RFC.

More pointed to the credibility challenge, Defendant submits the Plaintiff erroneously argues the ALJ did not consider any factor other than the objective medical evidence; that the only factor Plaintiff argues was not considered by the ALJ is his activities of daily living; and that a review of the hearing decision makes plain the ALJ considered all relevant evidence in

1    addition to the objective evidence, including the medical signs, laboratory findings, course of

2    treatment, and potential treatment side effects discussed therein.  Defendant relies on the fact the

3    ALJ expressly analyzed the medical opinions and prior administrative medical findings, noting

4    that Dr. Bullard and Dr. Rudito, whose prior administrative findings the ALJ found partially

5    persuasive, had the benefit of reviewing both medical and non-medical evidence, including

6    statements regarding Plaintiff's activities of daily living completed by both Plaintiff (AR 1159-

7    70) and his mother (AR 1171-79), when rendering their findings (AR 978-1001, 1004-35).

8    Defendant submits that because Plaintiff does not argue any error with the ALJ's evaluation of

9    the opinion evidence and the prior administrative findings, including the ALJ finding persuasive

10   those findings that ultimately support the RFC, and his non-persuasive finding regarding the

11   limitations assessed by Plaintiff's treatment providers that exceed the limitations ultimately

12   found in the RFC (AR 41-42).  As for the Plaintiff's arguments concerning daily activities,

13   Defendant responds neither the ALJ nor the State agency consultants made such an observation,

14   but instead, the ALJ credited the prior administrative findings of the State agency consultants

15   (AR 41), which were based, in part, upon their observations that the "intact" activities of daily

16   living reported by Plaintiff and his mother were not fully consistent with or supportive of his

17   allegations.

18          Defendant concludes again focusing on the reasonableness of the overall RFC

19   determination, stating the ALJ properly exercised his regulatory duty to resolve conflicts among

20   the evidence to evaluate Plaintiff's allegations regarding the intensity, persistence, and limiting

21   effects of his impairments and determine his RFC.  In doing so, the ALJ considered all relevant

22   evidence, including the objective medical evidence and opinion evidence and prior

23   administrative medical findings.

24          **C.     The Court finds the ALJ Failed to Provide Sufficient Clear and Convincing
                     Reasons to Discount Plaintiff's Testimony**

25

26          In consideration of the parties' general arguments, the Court finds the critical issue is

27   whether the ALJ provided a clear and convincing reason or reasons to reject Plaintiff's

28   testimony, separate and aside from the objective medical evidence.   See 20 C.F.R. §

1   404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your

2   pain or other symptoms or about the effect your symptoms have on your ability to work solely

3   because the available objective medical evidence does not substantiate your statements.").  The

4   Court does not find the parties' discussion of daily activities, something the ALJ did not

5   specifically cite to or rely upon, to be relevant to the Court's analysis here.  The Court does not

6   find Plaintiff's arguments concerning conservative treatment as to the question of whether the

7   ALJ properly weighed the objective medical evidence, to be persuasive.  The Court largely

8   agrees with Defendant that the ALJ did not err in that regard; the ALJ never found Plaintiff's

9   course of treatment "conservative," and the authority relied upon by Plaintiff involved hearing

10  decisions that erroneously characterized treatment as conservative.

11      Turning to the opinion at hand, the ALJ summarized the Plaintiff's symptom testimony as

12  follows:

13          The claimant alleged several severe limitations in his ability to
            perform basic work functions based on his physical impairments.
14          He stated that he has no vision when looking straight ahead with
            his left eye and the vision in his right eye has gotten worse. The
15          claimant described that he cannot see far because his vision is
            blurry. He indicated that he has to have his phone about six inches
16          from his face to read it. The claimant noted that he can watch TV
            but cannot see the TV fully. He alleged that he cannot read
17          subtitles on the TV. The claimant asserted that he does not drive
            because of his vision. He reported that he cannot read street signs
18          and that glasses do not work. The claimant noted that walking for
            him is unsafe and he cannot see well in the dark. He described that
19          he cannot see where a curb is and has to drag his foot to find the
            curb. The claimant also stated that he trips and bumps into things
20          often. He testified that he can walk for ten minutes but can be on
            feet up to twenty minutes. The claimant indicated that he has a
21          retinal implant in his left eye. He alleged that he can lift and carry
            no more than ten pounds. The claimant asserted that he has to
22          elevate his feet one to two feet above his heart three to four times a
            day for thirty minutes to help with swelling from his kidney
23          impairment. He reported that he cannot bend over because of his
            swelling and that he gets help putting on socks. The claimant noted
24          that his kidney issues cause nausea and vomiting. He described
            some incontinence issues at night. The claimant indicated that he is
25          not getting enough sleep at night and needs to take a nap during the
            day. He testified that his swelling affects his ability to sit for more
26          than ten or fifteen minutes. The claimant asserted that he went on
            an insulin pump for a few months to help with blood sugar. He
27          alleged that before his pump he felt dehydrated, drained, and had
            to urinate frequently. The claimant testified that a combination of
28          his symptoms have caused him to miss work and to lose his last

10

job.

(AR 38-39.)  The ALJ then proffered the general statement that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (AR 39.)  The next sentence essentially repeats this conclusion, stating "[a]s for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent with the medical evidence of record."  (Id.)  This, as the parties appear to agree, pertains to the ALJ's weighing of the objective medical evidence of record.

As Defendant accurately emphasizes, the ALJ then went on a detailed summary of the objective medical evidence and exam findings, in addition to pointing out specific records concerning Plaintiff's reports of pain or other limitations:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent with the medical evidence of record. The claimant presented with complaints of blurry vision and floating specks in his eyes (Exhibits 1F/12; 11F/8). At examination, the claimant also described seeing flashing lights and an inability to see at night (Exhibits 9F/4; 11F/8). He also described that he has double vision when watching TV (Exhibit 1F/12). The claimant was noted with a history of diabetes mellitus at examination (Exhibits 2F/6, 9; 8F/7, 19). At examination, the claimant also reported neuropathy from his diabetes (Exhibit 14F/1). He indicated the he had edema in his lower extremities (Exhibit 2F/6). The claimant reported that he has been experiencing bowel incontinence (Exhibit 2F/25). He was also noted to have a history of kidney issues as well (Exhibits 14F/1, 7; 24F/1, 31). The claimant described abdominal pain that his worse in the left upper quadrant (Exhibit 4F/95). He presented to the emergency room for abdominal pain including nausea and vomiting in May 2018, June 2018, January 2020, and February 2020 (Exhibits 4F/35, 39, 95, 175; 13F/32, 98).
>
> Vision testing of the claimant showed a left eye vision of 20/400 and a right eye vision of between 20/30 and 20/60 (Exhibits 1F/14; 2F/24; 9F/6; 11F/3, 9; 17F/3, 9, 21; 21F/3, 9, 15, 21, 29). Examination of the claimant revealed right eye posterior capsule haze (Exhibit 1F/15). The claimant was observed with abnormal macula in the bilateral eyes (Exhibit 1F/15; 7F/9; 9F/7; 11F/7; 17F/4, 17; 21F/4, 10, 15). He was noted with an abnormal visual field in his left eye (Exhibits 7F/9; 9F/7; 11F/11; 17F/16, 22; 21F/3, 10, 15, 21, 30). Blood testing of the claimant showed high

creatinine levels with occasional notations of normal creatinine levels (Exhibits 4F/42, 55, 99-100; 5F/9, 16, 35, 55, 61, 73; 13F/38, 132-165; 14F/10; 22F/23; 15F/1-2, 10, 14, 17). Testing of the claimant showed high blood sugars and a high A1C (Exhibits 1F/12; 4F/42, 55, 99-100; 5F/9, 16, 35, 55, 61, 73, 75, 77; 7F/3; 9F/4; 13F/38, 132-134, 136; 14F/10; 15F/1-2, 10, 14, 17; 17F/7; 22F/23, 27). Medical records showed the claimant was admitted to the hospital for three days between June and July 2018 for his diabetes and kidney issues (Exhibit 5F/49). The claimant was admitted to the hospital for three days in March 2018 for abdominal pain (Exhibit 4F/49, 52). Diagnostic imaging of the claimant's abdomen showed renal stones (Exhibits 5F/33; 13F/45). The claimant had a laser eye procedure on his left eye in March 2018 to treat his eye impairments (Exhibit 1F/18). Medical records showed the claimant had a left eye procedure in January 2019 and February 2019 to treat his eye impairment (Exhibit 21F/46, 51). The record revealed the claimant was prescribed opioids for pain (Exhibit 24F/3).

Although the claimant reported abdominal pain, examination showed the claimant with normal abdominal examinations (Exhibits 2F/6, 9, 12, 15, 18, 25-26; 3F/8, 10, 15; 4F/26, 68, 98; 5F/9,10, 50, 60; 8F/7, 10, 19, 22; 10F/23, 27, 31, 34, 37; 12F/175, 179, 182, 190; 13F/19, 82; 14F/1,4, 7, 10, 14; 20F/2; 23F/1, 7; 24F/6, 36). Even though the claimant asserted neuropathy, he was noted with normal sensation at repeated examinations (Exhibits 2F/6, 9, 12, 15, 18, 26; 3F/8, 10, 15; 5F/9; 8F/10, 19, 22; 10F/24, 27, 31, 34, 37; 12F/180, 183, 190; 14F/1, 4, 7, 10, 14; 15F/27; 20F/2; 23F/1, 7; 24F/6, 36). Despite the claimant's issues with lifting, the claimant exhibited normal strength at examination (Exhibits 3F/8, 15; 4F/26, 41, 98; 5F/9, 50; 10F/23, 27, 31, 34, 37; 12F/175, 182, 190; 23F/7). Although the claimant reported trouble with bending, examination indicated the claimant had a normal musculoskeletal range of motion and normal motor function (Exhibits 3F/8, 15; 4F/26, 41, 98; 5F/50; 8F/10, 19, 22; 10F/23-24, 27, 31, 34, 37; 12F/175, 179, 182, 190; 13F/19; 14F/1, 4, 7, 10, 14; 15F/27; 20F/2; 23F/1, 7; 24F/6, 36). Even though the claimant alleged swelling, he was observed with no edema overall and only occasional notations of pedal edema (Exhibits 2F/6, 9, 12, 15, 18, 26; 3F/8, 15; 5F/9, 50, 60; 8F/7, 10, 19, 22; 10F/23, 27, 31, 34, 37; 12F/175, 179, 182, 190; 14F/11, 14; 20F/2, 7). Despite the claimant's complaints of eye issues, the claimant was noted with near-normal right eye examinations throughout the period (Exhibits 1F/10; 2F/24; 3F/8, 18; 4F/26, 98; 5F/8, 59; 10F/23, 27, 31, 33, 36; 12F/175, 179, 182, 190; 13F/19, 81; 23F/6; 24F/36, 41). The claimant admitted non-compliance with his diet and medication (Exhibits 2F/25; 3F/6, 17; 4F/52; 10F/29; 20F/1). The record showed the claimant was admitted to hospital for exacerbations of his diabetes mellitus and kidney issues in March 2018 and August 2018 but left the hospital against medical advice (Exhibits 4F/71; 5F/10). Medical records revealed the claimant presented to the emergency room with abdominal pain in December 2017 and left without treatment (Exhibit 4F/12-15). The claimant reported he had clear vision in his left eye after treatment and that his diabetes is doing better at examination (Exhibits 9F/4;

21F/7; 24F/26). Medical records noted the claimant's June 2018 hospitalization was from complications from non-compliance with his treatment (Exhibit 4F/206).[4]

The claimant's reasonable effects from his opioid prescription, high blood sugar and high A1C support the claimant should be limited to light work with the postural limitations adopted in this case (Exhibits 1F/12; 4F/42, 55, 99-100; 5F/9, 16, 35, 55, 61, 73, 75, 77; 7F/3; 9F/4; 13F/38, 132-134, 136; 14F/10; 15F/1-2, 10, 14, 17; 17F/7; 22F/23, 27; 24F/3). However, the claimant's normal strength and sensation support the claimant needs no further limitations in this area (Exhibits 2F/6, 9, 12, 15, 18, 26; 3F/8, 10, 15; 4F/26, 41, 98; 5F/9, 50; 8F/10, 19, 22; 10F/23-24, 27, 31, 34, 37; 12F/175, 180, 182-183, 190; 14F/1, 4, 7, 10, 14; 15F/27; 20F/2; 23F/1, 7; 24F/6, 36). The claimant's abnormal visual field in the left eye and abnormal vision in the left eye indicate the claimant should be limited to the environmental, driving, work from the left, and depth perception limitations in the residual functional capacity (Exhibits 1F/14; 2F/24; 7F/9; 9F/6-7; 11F/3, 9, 11; 17F/3, 9, 16, 21-22; 21F/3, 9-10, 15, 21, 29-30). Although the claimant's almost normal corrected right eye vision and normal eye examinations indicate the claimant needs no further limitations in this area (Exhibits 1F/10, 14; 2F/24; 3F/8, 18; 4F/26, 98; 5F/8, 59; 9F/6; 10F/23, 27, 31, 33, 36; 11F/3, 9; 12F/175, 179, 182, 190; 13F/19, 81; 17F/3, 9, 21; 21F/3, 9, 15, 21, 29; 23F/6; 24F/36, 41).

(AR 39-41.)

Based on the Court's review, it appears the ALJ's reliance and findings concerning the normal examination findings and objective medical longitudinal record are indeed detailed and supported by numerous specific citations to the record. The Court finds that as for the ALJ's reliance and analysis of the objective medical evidence in weighing Plaintiff's testimony, such analysis is supported by substantial evidence, and Plaintiff has not sufficiently demonstrated error in the ALJ's conclusions regarding the objective medical evidence. See Smolen, 80 F.3d at

---

[4]  Defendant does not argue these isolated citations or references to improvement or non-compliance support a finding that the ALJ properly relied on non-compliance or improvement in treatment in discounting Plaintiff's symptom testimony, or that these are separate rationales aside from a reliance on the objective medical evidence records, that would satisfy the clear and convincing standard.  (See Opp'n 17 ("Plaintiff also erroneously argues that the ALJ did not consider any factor other than the objective medical evidence . . . a review of the hearing decision makes plain that the ALJ considered all relevant evidence [as] [i]n addition to the medical evidence -- including the medical signs, laboratory findings, course of treatment, and potential treatment side effects discussed therein -- the ALJ expressly analyzed the medical opinions and prior administrative medical findings.").  Again, it appears Defendant concedes this section of the analysis pertains to the objective medical evidence, and argues the ALJ additionally considered the medical opinions and prior administrative medical findings.  See Burrell, 775 F.3d at 1139 ("Although the ALJ made findings—discussed below—concerning Claimant's treatment for headaches, he never stated that he rested his adverse credibility determination on those findings.  For that reason alone, we reject the government's argument that the history of treatment for headaches is a specific, clear, and convincing reason to support the credibility finding.").

1279 (substantial evidence more than a scintilla, but less than a preponderance); Burch, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Again however, the critical question in the Court's view is whether the ALJ provided other reasons that would satisfy the clear and convincing standard. While a lack of objective medical evidence cannot form the sole basis presented by the ALJ for rejecting pain testimony, it is a proper factor the ALJ may consider in weighing a claimant's testimony. See Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); Burch, 400 F.3d at 680-81 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis ... Contrary to Burch's argument, the ALJ did not solely rely on the minimal objective evidence and Burch's daily activities in discrediting her testimony. Indeed, these factors were among those he relied on, however, the ALJ made additional specific findings to support his credibility determination.").

Again, in relevant part, in addition to the objective medical evidence (proffered to be inclusive of the medical signs, laboratory findings, course of treatment, and potential treatment side effects discussed), Defendant relies on the fact the ALJ expressly analyzed the medical opinions and prior administrative medical findings, noting that Dr. Bullard and Dr. Rudito, whose prior administrative findings the ALJ found partially persuasive and "had the benefit of reviewing both medical and non-medical evidence, including statements regarding Plaintiff's activities of daily living completed by both Plaintiff (AR 1159-70) and his mother (AR 1171-79)." (Opp'n 26.) Defendant highlights that Plaintiff does not argue error with the ALJ's evaluation of the opinion evidence and the prior administrative findings. (Id.)

As Defendant recognizes (Opp'n 21), the ALJ evaluates whether a claimant's statements about symptoms are consistent with: (1) the objective medical evidence; and (2) the other evidence in the record. 20 C.F.R. §§ 404.1529(c)(2)-(3), 416.929(c)(2)-(3). While acknowledging the Ninth Circuit's clear and convincing standard for weighing claimant

14

1    testimony and citing to the broad language of the regulations, Defendant does not provide any

2    clear caselaw or authority demonstrating that the ALJ's reliance on the opinion evidence and

3    prior administrative findings meet the clear and convincing standard when that is the only

4    proffered basis aside from what is clearly reliance on the objective medical evidence.  This may

5    be because the caselaw is indeed somewhat unclear as to where the line between reliance on

6    objective medical evidence and "other evidence" lays, and more specifically whether there is a

7    distinction between being unsupported by the objective medical evidence and being inconsistent

8    or in conflict with the objective medical evidence.  This Court's recent decisions have touched

9    upon the boundaries of these lines.  See Woods v. Comm'r of Soc. Sec., No. 1:20-CV-01110-

10   SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) ("While a *lack* of objective

11   medical evidence may not be the sole basis for rejection of symptom testimony, inconsistency

12   with the medical evidence or medical opinions can be sufficient.") (emphasis in original) (citing

13   e.g., Stobie v. Berryhill, 690 F. App'x 910, 911 (9th Cir. 2017)); Vue v. Comm'r of Soc. Sec.,

14   No. 1:20-CV-01302-SAB, 2022 WL 1751048, at *12–13 (E.D. Cal. May 31, 2022) ("The Court

15   finds this extensive discussion of the medical opinions, and other medical evidence of record, in

16   this case, provides a clear and convincing reason supported by substantial evidence in the record

17   for the ALJ to discount the symptom testimony.).

18         Importantly, in these cases, while the Court touched upon the potential distinction, the

19   Court found support from additional opined rationales, such as daily activities or non-compliance

20   with treatment.  See Woods, 2022 WL 1524772, at *10 ("Based on the state agency opinions,

21   and the totality of the medical records, the Court finds these were proper determinations

22   supported by substantial evidence, and even if not sufficient standing alone,[footnote 4 omitted]

23   are clear and convincing determinations when considered in conjunction with the findings

24   regarding Plaintiff's inconsistent reported daily activities."); Vue, 2022 WL 1751048, at *12–13

25   ("Additionally, the ALJ noted repeated instances of noncompliance with prescribed medication

26   regimes, and with referrals to psychological counseling.  The Court finds the ALJ's reliance on

27   noncompliance with treatment to be a clear and convincing reason to afford the more extreme

28   limitation testimony less weight in relation to weight of the objective medical evidence and other

medical opinions in the record.").  Another court has touched upon the issue:

> The distinction between medical evidence simply failing to support a plaintiff's testimony and medical evidence being inconsistent is critical because the latter may qualify as a specific, clear, and convincing reason to reject a plaintiff's testimony while the former does not. Compare Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (finding that contradiction with medical records is a sufficient basis for rejecting the claimant's subjective testimony), and Klein v. Berryhill, 717 F. App'x 664, 666 (9th Cir. 2017) (finding inconsistency between a plaintiff's testimony and objective medical evidence can comprise a clear and convincing reason for rejecting the testimony), with Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) as amended on reh'g (Sept. 17, 1997) (finding that the ALJ's sole reason for an adverse credibility determination was legally insufficient when it was premised on lack of medical support for claimant's testimony); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 884 (9th Cir. 2006) (describing ALJ's reliance on Plaintiff's testimony being "not consistent with or supported by the overall medical evidence of record" as "exactly the type [of justification] we have previously recognized the regulations prohibit"). In short, a lack of support from medical evidence is a factor the ALJ may consider in his analysis of a plaintiff's testimony, but it cannot be the sole basis for rejecting it. See Stone v. Berryhill, No. 3:17-CV-1689-W (RNB), 2018 WL 2317549, at *1, *5 (S.D. Cal. May 17, 2018) (finding that ALJ's adverse credibility determination was insufficient because his initial reasons for rejection were legally insufficient and the sole basis remaining for discounting pain testimony was lack of medical support) report and recommendation adopted, 2018 WL 3327873 (S.D. Cal. July 6, 2018); see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

Rosel A. v. Saul, No. 20CV1098-MSB, 2021 WL 2588156, at *6 (S.D. Cal. June 23, 2021).

First, as cited in Rosel, the Court finds the Ninth Circuit's statement in Robbins to be significant as to this issue.  The Ninth Circuit stated: "Reading the ALJ's fleeting credibility finding in the best light, he offers the following as justification: First, Robbins's testimony was 'not consistent with *or* supported by the overall medical evidence of record.' " Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883–84 (9th Cir. 2006) (emphasis added).  The Ninth Circuit held this statement was "exactly the type we have previously recognized the regulations prohibit," as an "ALJ may not discredit a claimant's subjective testimony on that basis [and] [t]o find the claimant not credible, the ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between his testimony and his own conduct, or on internal contradictions in that testimony." Robbins, 466 F.3d at 884 (quoting Light v. Soc. Sec.

Admin., 119 F.3d 789, 792 (9th Cir. 1997)).

The Rosel court ultimately concluded the generic finding of inconsistency was not enough without sufficient demonstration of specific inconsistencies with the testimony:

> However, the Commissioner notably did not specify which of Plaintiff's allegations the ALJ found were "not fully consistent" with these parts of the medical evidence. In fact, writing that medical records are "not fully consistent" implies that some parts of Plaintiff's testimony may be consistent, which the Commissioner never clarifies. Ultimately, the Commissioner's argument lacks specificity because the ALJ's order lacked specificity.
>
> Plaintiff made many statements about her pain and symptoms in her hearing testimony, (see AR 69-97), but the ALJ failed to identify the portions that were demonstrably false or to connect any statement to the objective medical evidence that disproved it. (See AR 22-26.) Instead, he stated vaguely that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence." (AR 22.) This generic reference to Plaintiff's testimony does not specifically identify the statements that the ALJ was discrediting.

Rosel A., 2021 WL 2588156, at *7.

Here, even assuming inconsistency with (rather than lack of support from) the objective medical record can be sufficient standing alone, the Court finds the ALJ's analysis here similarly does not identify the "portions that were demonstrably false or to connect any statement to the objective medical evidence that disproved it." Id. In this regard, the Court considers the Rosel court's conclusions concerning a need to clearly demonstrate something rising to the level of being demonstrably false or disproving testimony through citations to the objective record, in conjunction with the language in Robbins, guides the Court to find inconsistency or conflict with the medical record, if it can be considered a different and standalone sufficient finding from a lack of objective medical evidence, to be more rooted in the ability of the Court to utilize "ordinary techniques of credibility evaluation." See Tommasetti, 533 F.3d at 1039 (an ALJ may also consider ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid) (citation omitted); Robbins, 466 F.3d at 884 ("ALJ may not discredit a claimant's subjective testimony on that basis [and] [t]o find the claimant not

1  credible, the ALJ must rely either on reasons unrelated to the subjective testimony (e.g.,

2  reputation for dishonesty), on conflicts between his testimony and his own conduct, or on

3  internal contradictions in that testimony." (quoting <u>Light</u>, 119 F.3d at 792)).

4      The Court does not find the brief analysis in the unpublished opinion in <u>Stobie</u>, to clearly

5  define the parameters or support a different conclusion:

> Nor did the ALJ's credibility finding impermissibly rely
> exclusively on a lack of medical evidence.  The ALJ gave two ...
> clear and convincing reasons ... First, there was insufficient
> objective medical evidence to establish disability during the
> insured period. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir.
> 2005) ("Although lack of medical evidence cannot form the sole
> basis for discounting pain testimony, it is a factor that the ALJ can
> consider in his credibility analysis."). Second, Stobie's subjective
> symptom testimony conflicted with the objective medical evidence
> ... and Stobie's treating physician opined that Stobie could perform
> sedentary work eight months after his last insured date.  *Molina*,
> 674 F.3d at 1113 (the ALJ can reject symptom testimony that is
> inconsistent with the objective medical evidence); *Ghanim v.
> Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (treating physician
> opinions are entitled to the greatest weight).

15  <u>Stobie</u>, 690 F. App'x at 911.  Thus, the ALJ's relied on the contrary and inconsistent opinion by

16  Plaintiff's own treating physician, which again the Court finds touches upon the "ordinary

17  techniques of credibility evaluation."  <u>See</u> <u>Tommasetti</u>, 533 F.3d at 1039; <u>Rosel A.</u>, 2021 WL

18  2588156, at *7 ("[T]he ALJ failed to identify the portions that were demonstrably false or to

19  connect any statement to the objective medical evidence that disproved it.").  But it is not even

20  clear to the Court that the circumstances in <u>Stobie</u> would satisfy the guidance in <u>Robbins</u>.  466

21  F.3d at 884.

22      The other cases cited in this Court's decision in <u>Woods</u>, also contained additional

23  reasons, such as daily activities or non-compliance with treatment.  <u>See</u> <u>Stubbs-Danielson v.</u>

24  <u>Astrue</u>, 539 F.3d 1169, 1175 (9th Cir. 2008) (ALJ relied on daily activities); <u>Kallenbach v.</u>

25  <u>Berryhill</u>, 766 F. App'x 518, 521 (9th Cir. 2019) ("The ALJ provided

26  specific, clear, and convincing reasons   for   discounting   Kallenbach's testimony,   including

27  inconsistencies between Kallenbach's allegations of impairment and his medical treatment

28  records, inconsistencies between the medical opinion evidence and Kallenbach's testimony, and

1    Kallenbach's failure to seek and adhere to prescribed treatment."); Lake v. Colvin, No. CV 13-
2    77-GF-BMM, 2014 WL 1491055, at *6 (D. Mont. Apr. 14, 2014) ("The ALJ relied specifically
3    on Mr. Lake's 'dishonest[y] with doctors,' Mr. Lake's high functional capacities in spite of his
4    alleged limitations, and Mr. Lake's quick 'recant[ing] of his statement' when questioned about
5    inconsistent information."), aff'd, 633 F. App'x 414, 415 (9th Cir. 2016) ("The ALJ provided
6    specific, clear, and convincing reasons for the credibility assessment, including inconsistencies
7    between Lake's testimony regarding his limitations and the medical opinions and documentary
8    evidence.").

9         The Court stops here and declines to attempt to draft a treatise defining what may be the
10   precise parameters and standards, but finds here in this case, the Defendant's proffered reasons
11   of reliance on the medical opinions and prior administrative findings do not provide a sufficient
12   clear and convincing reason separate from the objective medical evidence, for discounting
13   Plaintiff's symptom testimony.  First, the ALJ did not expressly state the symptom testimony
14   was discounted because of the medical opinions or prior administrative findings.  See Burrell,
15   775 F.3d at 1139 ("Although the ALJ made findings—discussed below—concerning Claimant's
16   treatment for headaches, he never stated that he rested his adverse credibility determination on
17   those findings.  For that reason alone, we reject the government's argument that the history of
18   treatment for headaches is a specific, clear, and convincing reason to support the credibility
19   finding."); Lambert, 980 F.3d at 1268 ("[T]he ALJ must identify the specific testimony that he
20   discredited and explain the evidence undermining it.").

21        The Court additionally finds the ALJ's reliance on the medical opinions here is not
22   distinct enough from the ALJ's reasonings based on the objective medical evidence to allow the
23   Court to find the ALJ provided a clear and convincing reason for discounting the symptom
24   testimony that is separate from the ALJ's reliance on the objective medical evidence of record.
25   The Court further finds that to the extent inconsistency can be distinct from a lack of supportive
26   objective medical records, such inconsistency was not demonstrated to the extent necessary to
27   rise above the non-permitted sole reliance on the objective medical evidence.  See Tommasetti,
28   533 F.3d at 1039; Robbins, 466 F.3d at 884.  Specifically, the ALJ found he could not defer or

given any specific evidentiary weight or  controlling weight to any prior medical opinion (AR 41), and the ALJ's weighing of the medical opinions are exclusively based on the objective medical evidence.  The ALJ found partially persuasive the opinions of state agency physicians Drs. Bullar and Rudito as to physical impairments (full range of light work), based on supporting and non-supportive objective medical records and examinations.  (AR 41.)  The ALJ found the opinions of state agency physicians Drs. Schwartz and Hodes finding no severe mental impairments to be non-persuasive based on the lack of objective medical records.  (Id.)  The ALJ found Plaintiff's ophthalmologist Dr. Bertolucci's opinion of legal blindness non-persuasive as unsupported and inconsistent with the medical evidence and normal examinations.  (AR 41-42.)  Finally, the ALJ found Plaintiff's the opinion of Plaintiff's physician Dr. Saharanam to be non-persuasive as unsupported by medical evidence and normal examinations.  (AR 42.)

The Court therefore finds the ALJ erred by solely relying on the objective medical evidence in his expressed reasons for discounting Plaintiff's symptom testimony.  20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.");  Vertigan, 260 F.3d at 1049; Burch, 400 F.3d at 680-81; Robbins, 466 F.3d at 883–84.

### D.    The Court finds Remand is Appropriate

The ordinary remand rule provides that when "the record before the agency does not support the agency action, . . . the agency has not considered all relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014).  This applies equally in Social Security cases.  Treichler, 775 F.3d at 1099.  Under the Social Security Act "courts are empowered to affirm, modify, or reverse a decision by the Commissioner 'with or without remanding the cause for a rehearing.' " Garrison, 759 F.3d at 1019 (quoting 42 U.S.C. § 405(g)).  The decision to remand for benefits is discretionary.  Treichler, 775 F.3d at 1100.  In Social Security cases, courts generally remand

1   with instructions to calculate and award benefits when it is clear from the record that the

2   claimant is entitled to benefits.  Garrison, 759 F.3d at 1019.  Even when the circumstances are

3   present to remand for benefits, "[t]he decision whether to remand a case for additional evidence

4   or simply to award benefits is in our discretion."  Treichler, 775 F.3d at 1102 (quoting Swenson

5   v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989)).

6           The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which

7   must be satisfied in order for a court to remand to an ALJ with instructions to calculate and

8   award benefits: (1) the record has been fully developed and further administrative proceedings

9   would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for

10  rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly

11  discredited evidence were credited as true, the ALJ would be required to find the claimant

12  disabled on remand."  Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).  The credit as true

13  doctrine allows "flexibility" which "is properly understood as requiring courts to remand for

14  further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an

15  evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled.

16  Garrison, 759 F.3d at 1021.

17          The Court has determined the ALJ failed to provide clear and convincing reasons for the

18  discounted weight accorded to Plaintiff's symptom and limitation testimony.  The Court need not

19  address Plaintiff's remaining challenge to the ALJ's mental residual functional capacity

20  determination.  The Court finds that based on the ALJ's opinion and review of the record, doubts

21  remain as to whether Plaintiff is in fact disabled.  The Court orders this action remanded for

22  further administrative proceedings consistent with this opinion, and to further develop the record

23  as deemed necessary.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

**V.**

**CONCLUSION AND ORDER**

Based on all of the foregoing reasons, the Court finds that the ALJ did not provide clear and convincing reasons for discounting Plaintiff's symptom testimony.  See Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002) ("The clear and convincing standard is the most demanding required in Social Security cases."); 20 C.F.R. § 404.1529(c)(2); Vertigan, 260 F.3d at 1049; Burch, 400 F.3d at 680-81; Robbins, 466 F.3d at 883–84.  The Court need not address Plaintiff's remaining challenges however, the Court instructs the ALJ to evaluate whether the third party witness testimony, that was not addressed in the ALJ's opinion, is required to be weighed.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED and this matter is remanded back to the Commissioner of Social Security for further proceedings consistent with this order.  It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Anthony Elias Garcia and against Defendant Commissioner of Social Security.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   __**August 29, 2022**__                   _____

UNITED STATES MAGISTRATE JUDGE